Gene **MALONE**, Derrick L. **Malone Enterprises**, and **Ali Assi**, Appellants,

V.

**E.I. DU PONT DE NEMOURS & CO.** Appellee.

No. 2–98–218–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 9, 1999.

Rehearing Overruled Jan. 27, 2000.

---

---

William C. Meier, Bedford, for appellant.

Dennis M. Conrad, Robert D. Martinez, Kirkley, Schmidt & Cotten, Fort Worth, for appellee.

Panel B: DAUPHINOT, BRIGHAM, and HOLMAN, JJ.

---

1. As the parties have done in their briefs, any reference to "Malone" will also refer to appellant Derrick L. Malone Enterprises.

## OPINION

WILLIAM BRIGHAM, Justice.

### I.  INTRODUCTION

In this appeal, we are primarily asked to decide whether a potential buyer's letter to the seller setting forth the proposed terms of the sale can constitute an agreement that can be enforced under the statute of frauds.  Under the facts of this case, we hold that it cannot and affirm the trial court's judgments.

### II.  BACKGROUND

#### A.  FACTUAL BACKGROUND

Appellee E.I. du Pont de Nemours ("DuPont") operated an excess-paint-sales program.  Through this program, DuPont disposed of excess paint inventories that resulted from overproduction of certain colors or types of paint.  One way DuPont disposed of the excess paint was to sell it in parts of the world where it would not compete with sales of DuPont's current inventory of paint products.

Appellant Gene Malone is engaged in the salvage business as Derrick L. Malone Enterprises.[1]  In 1988, Malone became involved in the paint resale business.  In April 1992, Malone sent a letter to DuPont stating that he was "interested" in buying surplus paint from DuPont for $3 a gallon for sale in Lebanon.  Malone believed that he would be the only person buying surplus paint from DuPont.  Malone sent the letter in an effort to write down his "intentions" to see "if" DuPont would agree.

From June 1992 to December 1993, Malone made about 17 purchases of excess automotive paint from DuPont through its excess-paint-sales program, which totaled about 38,500 gallons.  Each of Malone's purchases under this program was made under a standard invoice form, which stated it "contain[ed] all of the terms and

conditions with respect to the sale and purchase of the products sold" and that Malone's "acceptance of the products or payment therefor shall be equivalent to [Malone's] assent to the terms and conditions hereof." Malone accepted and paid for the paint he received from DuPont and did not notify DuPont that any of the shipments or the terms of the sale were unacceptable. It appears that Malone was selling the paint to appellant Ali Assi who, in turn, was selling the paint in Lebanon. Assi also bought surplus paint directly from DuPont and believed that DuPont would help him get an exclusive distributorship in Lebanon. In late 1993 and early 1994, Malone and Assi claim that DuPont told them that the paint was not available to be shipped to Lebanon because of market conditions in Lebanon. In January 1994, DuPont sold excess paint to someone else, who was selling the paint in Lebanon.

### B. PROCEDURAL BACKGROUND

In late 1994, about a year after Malone made his last purchase from DuPont, Malone and Assi made a written demand on DuPont for damages, claiming that DuPont had agreed, pursuant to Malone's April 1992 letter, to sell all of its surplus paint to Malone. On May 4, 1995, Malone and Assi filed suit against DuPont for breach of contract, violation of the Deceptive Trade Practices Act "DTPA", fraud, and tortious interference with a contract. DuPont filed motions for partial summary judgment attacking each of these theories. DuPont asserted it was entitled to summary judgment because there was no genuine fact issue raised and because there was no evidence to support these theories. *See* TEX.R. CIV. P. 166a(c), (i). These motions were set for hearing on January 23, 1998.

On January 20, Malone and Assi filed a response to DuPont's motions and an amended petition. The amended petition carried forward the allegations and theories raised in their previous petition, but added allegations that some of the products bought from DuPont were defective and that DuPont committed "fraud in business" based on statements DuPont made when Malone and Assi tried to buy paint in late 1993 and early 1994. The court granted DuPont's motion on January 29.

Malone and Assi filed a motion for new trial, arguing that (1) they had raised a new claim—"fraud in business"—that DuPont had not addressed, (2) their response and amended pleading had been timely filed under civil procedure rule 4, and (3) the existence of an unidentified fact question precluded summary judgment. DuPont suggested that the court set aside the summary judgment, consider Malone and Assi's response and amended petition, and then reaffirm the summary judgment on the claims that were carried forward from the previous petition, which would leave any new claims in the amended petition to be addressed by additional motions.

On March 13, 1998, the trial court set aside the summary judgment. On March 23, after considering DuPont's summary judgment motions and the response, the court granted DuPont summary judgment on the claims in the previous petition.

DuPont filed a separate motion for summary judgment addressing the new allegations in the amended petition: product defect and "fraud in business." A hearing was set for May 22. Seven days before the hearing, Malone and Assi filed a response to DuPont's motion and a "Supplemental Petition." The supplemental petition did not add any new claims, but attempted to clarify the elements of common-law fraud. The trial court granted DuPont's motion for summary judgment on the additional allegations in the amended petition. Malone and Assi appeal the trial court's summary judgments.

### III. SUMMARY JUDGMENT ON "ABANDONED PLEADINGS"

Malone and Assi assert that the trial court erred in granting summary judg-

ment on their claims for breach of contract, DTPA, tortious interference, and fraud because it was based on DuPont's summary judgment motions that were filed before they filed their amended petition. Their argument seems to assert that the filing of an amended pleading automatically renders a motion for summary judgment directed to a prior pleading moot because the motion refers to the prior pleading.

■ In summary judgment cases, if an amended pleading raises new theories of recovery that are not addressed in the motion for summary judgment, it is improper to grant summary judgment on the entire case. *See Johnson v. Rollen,* 818 S.W.2d 180, 183 (Tex.App.—Houston [1 st Dist.] 1991, no writ); *Whiddon v. Metni,* 650 S.W.2d 904, 906 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). But a trial court can grant partial summary judgment on the claims that were addressed in the summary judgment motion and carried forward in the amended pleading without requiring the summary judgment motion to be amended. *See Whiddon,* 650 S.W.2d at 906. Accordingly, the trial court correctly granted DuPont's motions for summary judgment filed before the amended petition. *Cf. Martin v. Martin, Martin & Richards, Inc.,* 989 S.W.2d 357, 359 (Tex. 1998) (holding because trial court fully considered plaintiff's response to summary judgment motion, failure to render summary judgment without notice or hearing harmless; thus, trial court "was not required to vacate the summary judgment and then reinstate it to accomplish the same end").

### IV.  STANDARDS OF REVIEW

Because the trial court's orders granting summary judgment do not delineate the grounds on which they were granted, we must consider whether any of the grounds set forth in the motion will support the judgment. We must affirm if any of the theories advanced support the judgment.

*See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

We review a summary judgment granted under rule 166a(c) under the familiar standard: (1) the movant for summary judgment has the burden of showing that there is no issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovants will be taken as true; (3) every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

A rule 166a(i) no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *See Frazier v. Yu,* 987 S.W.2d 607, 610 (Tex.App.—Fort Worth 1999, pet. denied); *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *See Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *See Bomar v. Walls Reg'l Hosp.,* 983 S.W.2d 834, 840 (Tex.App.—Waco 1998, pet. filed).

### V.  BREACH OF CONTRACT

■ Malone asserts that summary judgment was improper on his breach-of-contract claim because DuPont agreed to sell him all of its excess paint for $3 a gallon and because there is an ambiguity, i.e., a fact issue, in the contractual agreement.

DuPont asserts that any alleged contract is unenforceable because it is not in

writing, which violates the statute of frauds. Malone responds that DuPont did not plead the statute of frauds in its answer, so it cannot avail itself of the affirmative defense. *See* TEX.R. CIV. P. 94. However, Malone did not object to this problem when DuPont filed its motion for summary judgment and raised the statute of frauds defense; thus, Malone's argument is waived. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991).

■ Accordingly, our question is whether the statute of frauds bars Malone's breach-of-contract claim. Malone argues that the statute of frauds does not apply because the sale was between merchants. *See* TEX. BUS. & COM.CODE ANN. § 2.201(b) (Vernon 1994). However, Malone did not expressly raise his status as a "merchant" being a material fact issue in his response to DuPont's motion for summary judgment. We cannot consider this argument as grounds for reversal of the trial court's summary judgment. *See* TEX.R. CIV. P. 166a(c); *State Bd. of Ins. v. Westland Film Indus.,* 705 S.W.2d 695, 696 (Tex. 1986); *see, e.g., Holmes v. Dallas Int'l Bank,* 718 S.W.2d 59, 60 (Tex.App.—Dallas 1986, writ ref'd n.r.e.) (holding response stating attached evidence demonstrated genuine fact issues insufficient to raise issue).

■ The statute of frauds provides that an alleged contract for the sale of goods for a price of $500 or more is unenforceable unless there is some writing sufficient to indicate that a contract for the sale of goods has been made, which is signed by the party to be charged. *See* TEX. BUS. & COM.CODE ANN. § 2.201(a). It was undisputed in the trial court that the alleged contract was for more than $500. Thus, the statute of frauds applies to this transaction. Malone did not dispute in the trial court that there was no written contract signed by DuPont. Accordingly, the statute of frauds was not complied with, and Malone's breach-of-contract claim is barred. Summary judgment was proper.

## VI. DTPA

Malone and Assi asserted product-defect claims (the paint was defective) and non-product-defect claims (DuPont did not sell as much paint as it agreed to sell) under the DTPA.

■ In the trial court and on appeal, DuPont argues that Malone's non-product-defect claims fail because Malone and Assi were not "consumers." TEX. BUS. & COM. CODE ANN. § 17.45(4) (Vernon Supp.2000). To be a consumer, Malone and Assi must have sought or acquired the paint by purchase or lease, and the paint must form the basis of the complaint. *See Melody Home Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351–52 (Tex.1987) (op. on reh'g). The goods themselves must form the basis of the complaint. *See Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex. 1981). In other words, a DTPA plaintiff whose claim is not based on any fault in the goods, but merely complains of the seller's failure to sell as much as the plaintiff wanted to buy, is not a consumer. *See Americom Distrib. Corp. v. ACS Communications, Inc.,* 990 F.2d 223, 227 (5th Cir.), *cert. denied,* 510 U.S. 867, 114 S.Ct. 189, 126 L.Ed.2d 148 (1993); *Footloose, Inc. v. Stride Rite Children's Group, Inc.,* 923 F.Supp. 114, 116–17 (N.D.Tex.1995).

Malone and Assi's claims that DuPont did not sell as much as they wanted to buy are not based on a complaint with the goods; thus, they are not consumers under the DTPA. The trial court correctly granted summary judgment on Malone and Assi's non-product-defect claims under the DTPA.

■ Malone and Assi asserted that the paint DuPont sold them was defective because some of the containers were mislabeled, the paint was used, and it was extremely hard to resell. DuPont argues that there was no evidence of the damages Malone and Assi suffered as a result of the paint defects. Their response did not

present any evidence of any damage suffered by Assi. Likewise on appeal, they fail to assert any evidence of damages Assi suffered. Thus, summary judgment was proper as to Assi.

■ Regarding Malone, he asserts that he put on evidence of his lost profits. Malone testified that his damages were an approximate guess: "I'm figuring that I bought about 100,000 gallons of paint and about 5,000 gallons was bad and it cost me about $1 a gallon to mess with that stuff. That's kind of what I'm—the way I'm figuring it." He "just assumed those problems," and his estimate of 5,000 gallons being defective was "pulled out of the air" and "purely a guess" because he kept no records of the defects. This speculative testimony is no evidence of damages and cannot raise a fact issue on that element of Malone's DTPA recovery. *See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 437 (Tex.1997). The summary judgment on Malone's product-defect DTPA claim was proper.

## VII. FRAUD

Malone and Assi raised two fraud theories in the trial court: (1) "fraud in business," which claimed DuPont made misrepresentations when it refused to sell paint to them in late 1993 and early 1994; and (2) in 1992, DuPont made misrepresentations by agreeing to sell all of its excess paint to Malone.

■ Malone and Assi's claim of "fraud in business" is a common-law fraud claim. As such, they had to prove that they took action in reliance on the representation. *See Stone v. Lawyers Title Ins. Corp.,* 554 S.W.2d 183, 185 (Tex.1977). DuPont moved for summary judgment because there was no evidence that Malone and Assi took any action in reliance on DuPont's alleged statement. Although Malone and Assi responded and referred to deposition testimony, none of this testimony showed any action Malone and Assi took in reliance on any of DuPont's state-

ments. On appeal, Malone and Assi argue that their affidavits raise a fact issue as to reliance, but these affidavits do not show any actions they took in reliance on DuPont's statements in late 1992 and early 1993. Summary judgment was proper on this claim.

■ Malone and Assi also pleaded that DuPont committed fraud when it represented in 1992 that it would sell all its surplus paint to Malone. These are the same allegations raised in Malone's breach-of-contract claim, which is barred by the statute of frauds. Malone and Assi cannot circumvent the statute of frauds by renaming their contract claim as one sounding in tort law. *See Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 837 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Choi v. McKenzie,* 975 S.W.2d 740, 744-45 (Tex.App.—Corpus Christi 1998, pet. denied). Summary judgment was proper on this claim.

## VIII. TORTIOUS INTERFERENCE WITH A CONTRACT

■ Malone and Assi alleged that DuPont interfered with a contract for Malone to supply paint to Assi "by failing to honor its agreement to supply paint" to Malone. DuPont moved for summary judgment on the grounds that any interference was justified and that they could not prove intentional interference because the evidence showed that DuPont was unaware of the alleged contract.

■ Malone and Assi did not challenge the sufficiency of DuPont's motion and summary judgment evidence on its justification defense. They also do not challenge it on appeal. When a party moves for summary judgment on more than one ground, and summary judgment is granted without specifying the grounds, the appellant has the burden of showing on appeal that all grounds asserted were insufficient. *See Star-Telegram,* 915 S.W.2d at 473; *Bennett v. Tarrant County Water Control*

& *Improvement Dist. No. 1*, 894 S.W.2d 441, 446 (Tex.App.—Fort Worth 1995, writ denied). The order granting summary judgment did not specify on which ground it was granted; thus, we will not disturb the summary judgment granted on Malone and Assi's tortious-interference claim.

## IX.  CONCLUSION

We hold the trial court did not err in granting final summary judgment in Du-Pont's favor. Accordingly, we overrule Malone and Assi's issue and affirm the trial court's judgments.